# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED
at 12 O'clock & 29 min P M
Date 6/28/07
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Chapter 12 Case |
| KURT E. GRAHAM | ) | |
| | ) | Number <u>07-40427</u> |
| *Debtor* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| | ) | Chapter 12 Case |
| GRAHAM FORESTRY | ) | |
| | ) | Number <u>07-40428</u> |
| *Debtor* | ) | |

### MEMORANDUM AND ORDER
### ON AGSOUTH FARM CREDIT, ACA'S
### EMERGENCY MOTION TO LIFT STAY

AgSouth Farm Credit, ACA (AgSouth) has filed an Emergency Motion to Lift Stay in each of the above Chapter 12 cases. *See* Case No. 07-40427, Dckt. No. 44 (May 8, 2007); Case No. 07-40428, Dckt. No. 27 (May 8, 2007). As will be discussed in greater detail *infra*, AgSouth seeks stay relief so as to exercise its state law remedies against a specific sod crop that it characterizes as the only viable collateral it can look to in satisfaction of a lien it possesses. *See* Case No. 07-40427, Dckt. No. 44, p. 2 (May 8, 2007). In opposition to AgSouth's motion, the Debtors contend that AgSouth never had an interest in the specific sod crop in question, which is the property of an entity that was not a party to any agreement with AgSouth. After consideration of the evidence presented and the arguments of counsel at the consolidated hearing held in this matter on May 21-22, 2007, the Court

%AO 72A
(Rev. 8/82)

hereby enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

This case involves an individual, Debtor Kurt Graham, and two related but separate entities, Debtor Graham Forestry, Inc. (Graham Forestry) and Graham Farms, Inc. (Graham Farms). Kurt Graham filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code on March 22, 2007. Graham Forestry also filed a voluntary petition for relief under Chapter 12 on March 22, 2007. For the sake of clarity, it is important to note that Graham Farms has not filed a bankruptcy petition and is not a debtor. Therefore, when I use the phrase "Debtors" in this memorandum and order, I am referring only to Kurt Graham and Graham Forestry.

On May 18, 2006, the Debtors signed a Note, Security Agreement, and Loan Agreement with AgSouth for the purpose of borrowing $265,000.00 to finance farm operations for both Kurt Graham and Graham Forestry. *See* Case No. 07-40427, Dckt. No. 70, Exs. 2-4 (May 21, 2007). Pursuant to the Security Agreement, AgSouth received a security interest in the following property:

> All crops of any kind or description now growing or hereafter to be planted or grown by Debtor, specifically including but not limited to crops of cotton, corn, soybeans and peanuts grown during the 2006 crop year and grown in Screven County, Georgia and Effingham County, Georgia. ALL PRODUCTS AND PROCEEDS OF SAID COLLATERAL AND ANY ACCOUNTS RECEIVABLE

> GENERATED BY THE SALE OF SAID COLLATERAL ARE ALSO COVERED UNDER THIS SECURITY AGREEMENT. SEE "SCHEDULE A" ATTACHED FOR A DETAILED DESCRIPTION OF REAL ESTATE AND RECORD OWNERS.

See Id., Ex. 3.

Included in Schedule A to the Security Agreement is Farm 791, consisting of 555 acres; owned by Ralph Graham, Larry D. Weddle, and Carey Graham; and located in Effingham County. The Debtors warranted title to all collateral described in the Security Agreement. See Id. ("Debtor warrants title to the Collateral herein described and that Debtor owns it free and clear of all liens, encumbrances and claims and prior security interests and that Debtor will defend title thereto in favor of [AgSouth Farm Credit, ACA]."). On May 19, 2006, AgSouth perfected its security interest in all crops grown on Farm 791 in Effingham County by filing notice of its interest in both the UCC records and the land records in Effingham County. See Id., Ex. 5.

Kurt Graham signed a lease for Farm 791 in his name individually on February 4, 2004. See Id., Ex. 53. Furthermore, in a FSA-578 form dated April 16, 2007, Kurt Graham told the Farm Service Agency (FSA) of the United States Department of Agriculture that for the year 2006, he individually planted, *inter alia*, 54.2 acres of sod on Farm 791. See Id., Ex. 13. On this form, Kurt Graham indicated that he, individually, was the producer of all crops on Farm 791 and that he had an interest in the 54.2 acres of sod. See Id. Similarly, in a 502 form reported to the FSA on February 24, 2006, Kurt Graham

AO 72A
(Rev. 8/82)

3

represented that he was leasing land at Farm 791 in Effingham County for farming operations. *See* Id., Ex. 6. Conversely, in a FSA-578 form dated April 16, 2007, Graham Farms did not reveal to the FSA that it was conducting any farming on Farm 791 or that it had planted any sod in 2006. *See* Id., Ex. 14. In addition, in a 502 form submitted to the FSA on April 10, 2006, Graham Farms did not indicate that it owned or was leasing land at Farm 791. *See* Id., Ex. 7.

During the loan negotiations, Kurt Graham represented to AgSouth that for the year 2006, he would be planting cotton, peanuts, corn, soybeans, and rye. *See* Id., Ex. 19. This included 135 acres for cotton, 347 acres for peanuts, 100 acres for corn, 700 acres for soybeans, and 450 acres of rye, for a total of 1732 acres. In his reports to the FSA concerning his farming operations in Effingham County, however, he indicated that he had planted 61.4 acres of cotton, 178.2 acres of peanuts, 91.8 acres of corn, 320.9 acres of soybeans, 54.2 acres of sod, 64.8 acres of watermelons, and left 249.1 acres fallow. *See* Id., Ex. 13. This is a total of 1020.4 acres. As is evident in another report to the FSA, Kurt Graham's farming operations in Screven County included 254 acres for soybeans, 13.40 acres for TRANAR, and 69.40 fallow acres, for a total of 336.8 acres. *See* Id., Ex. 23. The total amount of acreage between Kurt Graham's farming operations in the two counties is 1357.2 acres. In their Loan Agreement with AgSouth, the Debtors agreed to advise AgSouth of any changes in their cropping plan. *See* Id., Ex. 4, p. 2 ("Borrower agrees to advise the Lender prior to any planned changes in the proposed farm plans as to crops grown or acreage planted."). However, Kurt Graham did not advise AgSouth of any changes in his crops or

acreage for 2006. *See* Case No. 07-40427, Dckt. No. 68 (May 21, 2007) (testimony of John Mark Counts, AgSouth Regional Vice President).

During the loan process with AgSouth, Kurt Graham was asked about his interest in Graham Farms. He informed AgSouth that he no longer had any interest in Graham Farms and produced a document showing that his mother, Jane Graham, owned and controlled Graham Farms since December 2005. *See* Case No. 07-40427, Dckt. No. 70, Ex. 21 (May 21, 2007). Representatives of AgSouth were under the impression that the crops to serve as their collateral would be produced only by Kurt Graham and Graham Forestry. *See* Case No. 07-40427, Dckt. No. 68 (May 21, 2007) (testimony of John Mark Counts, AgSouth Regional Vice President). However, on or about February 24, 2006, Kurt Graham reported to the FSA in his 502 form that he had an interest in Graham Farms as a farming operation. *See* Case No. 07-40427, Dckt. No. 70, Ex. 6 (May 21, 2007). On May 31, 2006, he signed a 509 form entitled Continuation of Owners or Producer's Crop Information for Graham Farms as "Graham Farms by Kurt Graham." *See* Id., Ex. 31. Also, in its 502 form on April 10, 2006, Graham Farms indicated that it had an affiliated farming interest with Kurt Graham. *See* Id., Ex. 7.

Graham Farms had a bank account at Citizens Bank of Effingham. During 2006, several checks payable to either Kurt Graham or Graham Forestry were deposited into that account. These included a $352.85 payment from Forklifts & Bobcats of Savannah on August 11, 2006; a $16,520.00 payment from Tillman & Deal Farm Supply, Inc. on

AO 72A
(Rev. 8/82)

5

November 6, 2006; a $1,820.00 payment from Loy Graham on November 16, 2006; a $10,000.00 payment from Davis Feed & Seed Inc. on December 11, 2006; and a $65.00 payment from Birdsong Peanuts on December 27, 2006. *See* Id., Ex. 9. Also in 2006, Kurt Graham deposited into this account checks made payable to him from AgSouth in the amounts of $5,000.00 (July 13, 2006) and $20,000.00 (October 26, 2006). *See* Id. Similar transactions occurred in early 2007 when Kurt Graham deposited a check worth $7,728.61 from Davis Feed & Seed Inc. on January 3, 2007, and a $7,223.42 payment from Collins Bonded Warehouse on February 5, 2007. *See* Id. In addition to all of these transactions, Kurt Graham admitted at the hearing that he deposited insurance proceeds payable to both him and AgSouth into Graham Farms's account at the Citizens Bank of Effingham without AgSouth's endorsement. *See* Case No. 07-40427, Dckt. No. 68 (May 21, 2007).[1]

Kurt Graham has submitted a Summary of Operations (the Summary), which estimates that his farming operations in 2007 will yield disposable income of $47,880.00. *See* Case No. 07-40427, Dckt. No. 38 (April 24, 2007). In a previous Memorandum and Order (the previous Order) in these Chapter 12 cases,[2] however, I granted the Bank of Newington's motion for stay relief, permitting it to exercise its state law remedies to foreclose on its collateral, which included several pieces of farming equipment, tools, and vehicles. *See* Case No. 07-40427, Dckt. No. 85, pgs. 11-12 (June 13, 2007). I granted the

---

[1] This testimony is corroborated by the testimony of AgSouth Regional Vice President John Mark Counts. *See* Case No. 07-40427, Dckt. No. 68 (May 21, 2007).

[2] In considering AgSouth's motion for stay relief, I incorporate all of the previous Order's findings of fact and conclusions of law.

Bank's motion after concluding, *inter alia*, that the Summary underestimates known expenses and fails to account for unknown costs, resulting in a doubtful profit for 2007. *See* Id., p. 9. The Summary indicates that Kurt Graham had a negative net income for crop year 2006 of $178,032.53 and that he also had a net loss for crop year 2005. *See* Id., p. 6.

## CONCLUSIONS OF LAW

A court must grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Relief may be granted when the court finds that a debtor has acted in bad faith. Barclays-American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broad., Inc.), 871 F.2d 1023, 1026-27 (11th Cir. 1989). "Cause, for either dismissal or relief from the stay, may be found based on unenumerated factors, including 'bad faith,' or failure to deal with creditors fairly even where 'bad faith' is not found." In re Syndicom Corp., 268 B.R. 26, 48 (Bankr. S.D.N.Y. 2001); *see also* In re Balco Equities Ltd., Inc., 312 B.R. 734, 749-50 (Bankr. S.D.N.Y. 2004).

In this case, AgSouth has proven that Kurt Graham failed to provide material information to AgSouth during the course of their relationship. On April 28, 2006, Kurt Graham told AgSouth that he would be growing dryland cotton, irrigated cotton, irrigated peanuts, dryland peanuts, irrigated corn, soybeans, and rye. *See* Case No. 07-40427, Dckt. No. 70, Ex. 19 (May 21, 2007). However, he later failed to inform AgSouth that watermelon and sod crops would be planted on Farm 791, as he reported to the FSA, despite the fact that

the Loan Agreement required such notification. *See* Id., Ex. 4, p. 2 ("Borrower agrees to advise the Lender prior to any planned changes in the proposed farm plans as to crops grown or acreage planted.").

Kurt Graham's material omissions and misrepresentations include his failure to account for his true relationship with and interest in the non-debtor Graham Farms. He represented to AgSouth that he had previously transferred his interest in Graham Farms to his mother in December 2005. *See* Case No. 07-40427, Dckt. No. 68 (May 21, 2007) (testimony of John Mark Counts, AgSouth Regional Vice President). However, in documents dated February 24, 2006, April 10, 2006, and May 31, 2006, he reported to the FSA that he had affiliated farming interests in Graham Farms. *See* Case No. 07-40427, Dckt. No. 70, Exs. 6-7, 31 (May 21, 2007). The evidence is not disputed that Kurt Graham deposited several checks made payable to him and Graham Forestry into Graham Farm's bank account in 2006, *see* Id., Ex. 9, and converted proceeds of AgSouth's collateral by depositing insurance proceeds made payable to both him and AgSouth into Graham Farm's bank account at Citizens Bank of Effingham without AgSouth's endorsement, *see* Case No. 07-40427, Dckt. No. 68 (May 21, 2007) (testimony of Kurt Graham and John Mark Counts).

Finally, his argument that Graham Farms owned some of the crops on Farm 791 apart and separate from the Debtors and that they are not included in AgSouth's collateral is refuted by representations he made to the FSA concerning the interest that he, Kurt Graham in his individual capacity, had in the 54.2 acres of sod crop. *See* Case No. 07-

40427, Dckt. No. 70, Ex. 13 (May 21, 2007). This is compounded by the fact that he represented to this Court that the sod crop on Farm 791 belongs to him. In his Summary, which was submitted directly to this Court, Kurt Graham attached his FSA-578 form, which includes the sod crop as evidence of the crops he had planted in 2006. *See* Case No. 07-40427, Dckt. No. 38 (April 24, 2007). No attempt is made to separate this crop from the others or make clear that such crop was the property of another entity.

These acts, omissions, and contradictions are compelling evidence of bad faith constituting cause to grant relief. Kurt Graham has defended AgSouth's motion by questioning whether AgSouth has a security interest in the sod at all. However, because of his multiple contradictory representations to this Court, AgSouth, and the FSA concerning ownership of the sod crop on Farm 791, I find that he has failed to make the requisite showing that there is a bona fide question about the validity of AgSouth's lien. Although a secured creditor must prove the validity of its security interest to prevail in a motion for stay relief, AgSouth has made a prima facie case that its lien on the sod crop is valid. *See* Southwest Georgia Prod. Credit Ass'n v. James, 180 Ga. App. 795, 350 S.E.2d 786 (1986). Kurt Graham has failed to carry the burden necessary to hold this motion in abeyance pending litigation over the validity of the lien, which must be decided in another proceeding, presumably in state court. *See* Bargas v. Rice (In re Rice), 82 B.R. 623, 626 (Bankr. S.D. Ga. 1987) ("[W]hen presented with evidence in defense of a motion for relief that strongly supports an inference that the lien might be held invalid in such a proceeding, this court would be compelled to deny the motion and leave the stay in effect for a sufficient time to

allow the debtor to pursue other litigation.").

In light of these conclusions, I hold that AgSouth has proven cause to grant its motion for stay relief.

**ORDER**

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that AgSouth Farm Credit, ACA's motion for stay relief to exercise its state law remedies against any interest that the Debtors may have in the sod crop at Farm 791 is GRANTED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 28th day of June, 2007.

AO 72A
(Rev. 8/82)