# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Chapter 12 Case |
| KURT E. GRAHAM | ) | |
| | ) | Number <u>07-40427</u> |
| *Debtor* | ) | |
| | ) | |
| | ) | |
| | ) | |
| CAREY GRAHAM | ) | **FILED** |
| | ) | Samuel L. Kay, Clerk |
| *Movant* | ) | United States Bankruptcy Court |
| | ) | Savannah, Georgia |
| | ) | By lbarnard at 4:20 pm, Jun 15, 2010 |
| | ) | |
| v. | ) | |
| | ) | |
| KURT E. GRAHAM | ) | |
| | ) | |
| *Respondent* | ) | |

### MEMORANDUM AND ORDER
### ON RESPONDENT'S MOTION TO DENY MOVANT'S
### MOTION TO DISMISS OR IN THE ALTERNATIVE TO CONVERT
### FOR FRAUD; AND FOR MODIFICATION OF THE AUTOMATIC STAY

### BACKGROUND

This litigation represents yet another chapter in the intra-family dispute that has plagued this family for years and has been the springboard for two adversary proceedings between family members. The Graham litigation began in March of 2007 when Kurt Graham ("Debtor") filed Chapter 12 in this Court. Petition, Dckt. No. 1 (March 22, 2007). During the pendency of the Chapter 12, Debtor filed an adversary proceeding against his

uncle Carey Graham ("Carey") alleging violation of the automatic stay and requesting both monetary and injunctive relief. Complaint, Case 07-04124, Dckt. No. 1 (July 11, 2007). Debtor was ultimately awarded $76,267.00 in actual damages, attorneys' fees, and punitive damages. Order, Case 07-04124, Dckt. No. 117 (June 18, 2009). The Chapter 12 plan was confirmed by order of this Court a year after it was filed. Order, Dckt. No. 271 (March 11, 2008). Shortly thereafter Kurt's cousin Loy Graham filed adversary case 08-04021, alleging that Debtor interfered with Loy's irrigation system, and requesting an interlocutory injunction. Dckt. No. 1, (May 5, 2008). This Court ultimately granted stay relief for the matter to be handled in state court. Order, Case 08-04021, Dckt. No. 20 (November 26, 2008).

On January 29, 2010, Carey filed with this Court a Motion to Dismiss; or in the Alternative to Convert to Chapter 7 for Fraud, alleging that Debtor had engaged in fraud and requesting this Court to dismiss or convert the Chapter 12 case. Motion, Dckt. No. 314. Debtor filed a Responsive Motion on February 18, 2010, challenging Carey's standing to file a motion in Debtor's Chapter 12. Motion, Dckt. No. 317. Debtor supplemented this response on March 22, 2010, further detailing his assertion that Carey lacks standing to pursue his motion. Carey responded to these filings with his own Brief on the Issue of Standing. Brief, Dckt. No. 327 (April 5, 2010).

This Court conducted a hearing on May 3, 2010, and held that Carey held

an administrative claim for $8,369.00. Kurt paid Carey in full by delivering a certified check to Carey's attorney on May 4, 2010. Response, Dckt. No. 345, ¶ 3 (May 4, 2010). Kurt also moved this Court to dismiss Carey's Request for Administrative Claim as moot. Id. Carey responded, requesting this Court to deny Kurt's motion and to enter an order declaring Carey to be an administrative claim holder. Response, Dckt. No. 346, p. 2 (May 5, 2010). On May 6, 2010, Blanchard Equipment Co., Inc. transferred claim # 8 in the amount of $7,276.96 to Carey. Transfer, Dckt. No. 347. On May 12, 2010, Boddiford Farm Services, Inc. transferred claim #9 in the amount of $11,165.27 to Carey. Transfer, Dckt. No. 353. Kurt has objected to both of these transfers on the ground that Carey has provided no evidence substantiating the need for the transfers. Objection, Dckt. Nos. 358, 359 (June 1, 2010).

## CONCLUSIONS OF LAW

Carey's Motion to Dismiss; or in the Alternative to Convert to Chapter 7 for Fraud hinges primarily on the language in 11 U.S.C. § 1208(d), which states:

> On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter or convert a case under this chapter to a case under chapter 7 of this title upon a showing that the debtor has committed fraud in connection with the case.

Carey's motion (Dckt. No. 314) details eight counts of Debtor's alleged fraud in connection with the filing of the bankruptcy case, and his followup brief (Dckt. No.

327) gives the details of his purported standing to file that motion. According to that brief, Debtor's plan was confirmed in early 2008, and shortly thereafter Carey and Debtor entered into a new extension of the 2004 lease of a farm for Debtor to cultivate (the "2008 lease"). Allegedly, Debtor failed to make any rental payments for 2009 and 2010.

Debtor's responsive motion (Dckt. No. 317) does not address the allegations of fraud head-on. Rather, it challenges Carey's standing to bring the motion, alleging that "Carey's involvement only comes from being involved with Debtor on a lease and his own wrongful actions in violation of the automatic stay in regards to that lease." Motion, Dckt. No. 317 at p. 3. Debtor further alleges that Carey "does not have a stake in whether or not Debtor's case is successfully completed" and that "whether Debtor continues in his bankruptcy or not does not impact Carey in any significant way." Id. Debtor further alleges that because Carey has no stake in the bankruptcy, he is not a "party in interest" for purposes of 11 U.S.C. § 1208(d).

If Debtor's allegation is correct, the effect would be that Carey has no standing to file a Motion to Dismiss or Convert pursuant to 11 U.S.C. § 1208(d). Carey contends that the 2009-2010 payments due under the 2008 lease, which are administrative expenses, granted him standing as a party in interest under 11 U.S.C. § 1208(d). Carey also acquired two claims, and while Carey has not expressly alleged that these acquisitions give him continued standing, this Court takes judicial notice of the acquisitions and considers

whether Carey continues to have standing because of them.

Administrative Expenses

11 U.S.C. § 503(b)(1)(A) states that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate including wages, salaries, and commissions for services rendered after the commencement of the case." After a lengthy hearing on this issue on May 3, 2010, I determined that Kurt's unpaid 2009-2010 lease obligations of $8,369.33[1] constituted administrative expenses in this Chapter 12, incurred as necessary costs of preserving the estate.

Transferred Claims

Transferred claims are governed by Federal Rule of Bankruptcy Procedure 3001(e). Rule 3001(e)(2), applicable here, states that:

> [i]f a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 21 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely

---

[1] This Court held that Kurt owed $7,536 under the lease for 2009 and $833.33 under the lease for 2010.

5

> objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

Kurt has objected to the two claim transfers, alleging that Carey has provided no evidence substantiating the need for the transfers. Objection, Dckt. Nos. 359, 360. However, the Code specifically states that the transferor is the only party able to file an objection. Debtors have no standing to object to transfers between creditors and third parties. Viking Assocs., LLC v. Drewes, 120 F.3d 98, 102 (8th Cir. 1997); In re Univ. Towers, Inc., 227 B.R. 727, 728 (Bankr. W.D. Mo. 1998); Reserve Capital Corp. v. Levine, 2007 WL 329179, *3 (N.D.N.Y. January 30, 2007); In re Northwood Props., LLC, 2006 WL 1738282, *1, *2 (Bankr. D. Mass. June 21, 2006). In fact, if the transferor does not object to the proposed transfer, the transfer becomes effective without further action from the court. In re Lynn, 285 B.R. 858, 861 (Bankr. S.D.N.Y. 2002). I therefore hold that Debtor has no standing to object to the transfer, and because the statutorily required 21 days have passed since the transfer without objections from the transferors, the assignment is effective.

Party in Interest

Because Carey had an administrative claim for the post-petition lease payment, he was a party in interest to the Chapter 12 under 11 U.S.C. § 1208(d) at the time of filing. *See* In re Stone Barn Manhattan LLC, 405 B.R. 68, 76 (Bankr. S.D.N.Y. 2009) (noting that "[t]here is authority that lessors of non-consumer personal property can resort to . . . 503(b)(1) of the Bankruptcy Code to assert administrative claims against a debtor for

✑AO 72A
(Rev. 8/82)

lease payments due after the filing of a bankruptcy case); In re Barnes, 275 B.R. 889, 893 (Bankr. E.D. Cal. 2002) (noting that the former chapter 7 trustee, as an administrative claimant, "has the necessary financial interest to be considered a party in interest with standing" to "object to confirmation, object to exemptions, and move to convert the case"). Even Debtor concedes that "party in interest" is a flexible term, noting in his brief (Dckt. No. 317, ¶ 6) that "[i]t has been described as an expandable concept depending on the particular factual context in which it is applied," (quoting In re River Bend-Oxford Assocs., 114 B.R. 111, 113 (Bankr. D. Md. 1990) and that it has been defined as "anyone who has a practical stake in the outcome of a case." (citing In re Amatex Corp., 755 F.2d 1034, 1041-44 (3rd Cir. 1985).

I am persuaded by the courts that have held that an administrative claim holder is a party in interest. I find Debtor's assertion that Carey—who stood to collect a substantial amount of back-rent from Debtor's operation of the farm—had no practical stake in the outcome of the case, to be without merit. Debtor and Carey agreed to a lease term in March of 2008 pursuant to a mediation. Brief, Dckt. No. 327, p. 2. Carey had foregone other uses of the farm for the sake of generating an income stream from the lease. Since Debtor did not timely pay Carey the amounts due under the lease, I find that Carey was a party in interest at the time of the filing of the Motion to Dismiss.

Kurt has since paid the administrative claim in its entirety. While this may

have affected my analysis had it occurred in a vacuum, Carey has become a valid claim holder by becoming the transferee of two valid claims. As such, I find that Carey continues to be a party in interest.

Standing

Because I conclude that Carey is a party in interest I also conclude that he has standing to pursue a motion under 11 U.S.C. § 1208(d).

Revocation of Order of Confirmation

Debtor raises as a defense the language in 11 U.S.C. § 1230, which states that "[o]n request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1225 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud." Debtor alleges that the statutorily provided 180 days have run, that Carey is time barred from requesting revocation, and that allowing Carey to challenge the allegedly fraudulent confirmation under the guise of a Motion to Dismiss pursuant to 11 U.S.C. § 1208(d) is letting him end-run around the firm deadline provided in 11 U.S.C. § 1230(a).

The authors of the Code contemplated an overlap between sections 1230 and 1208. In fact, 11 U.S.C. § 1208(c)(7) specifically states that "[o]n request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter for

cause, including . . . revocation of the order of confirmation under section 1230 of this title . . . . " Accordingly, revocation of the confirmed plan is cause for dismissal. However, since revocation can only be ordered for a period of 180 days after confirmation and that deadline expired before this motion was filed, it would constitute an impermissible disregard of § 1230 and principles of finality to allow Carey to proffer evidence of pre-confirmation fraud.

Sections 1230 and 1208 are read in conjunction with each other and must be read not to conflict. 11 U.S.C. § 1230(a) provides a 180 day window after confirmation to challenge the confirmation for fraud. This is effectively a 180 day statute of limitations on revocation for pre-petition fraud. On the other hand, 11 U.S.C. § 1208(c) provides a mechanism for dismissal or conversion

> for cause, including (1) unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors; (2) nonpayment of any fees and charges required under chapter 123 of title 28; (3) failure to file a plan timely under section 1221 of this title; (4) failure to commence making timely payments required by a confirmed plan; (5) denial of confirmation of a plan under section 1225 of this title and denial of a request made for additional time for filing another plan or a modification of a plan; (6) material default by the debtor with respect to a term of a confirmed plan; (7) revocation of the order of confirmation under section 1230 of this title, and denial of confirmation of a modified plan under section 1229 of this title; (8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; (9) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; and (10) failure of the debtor to pay any

9

>                    domestic support obligation that first becomes payable after the
>                    date of the filing of the petition.

Because the examples of cause are non-exclusive, I find that any ground proved post-confirmation can be a basis for dismissal, and that the § 1208 authority to dismiss is not limited in time. I therefore read this provision to cover all post-petition conduct. This prevents 11 U.S.C. § 1208(d) from being used to end-run the statute of limitations for pre-petition fraud, while leaving the power to dismiss for post-petition acts intact. It also, however, limits the Court's scope of dismissal for fraud to post-confirmation conduct.

## CONCLUSION

I find that Carey's administrative claim in the amount of the $8,369.33 for 2009-2010 under the 2008 lease gave Carey a practical stake in the outcome of the case, that Carey continues to have a practical stake in the outcome of the case via the two transferred claims, that Carey is a party in interest, and that pursuant to 11 U.S.C. § 1208(d), Carey has standing to prosecute the Motion to Dismiss or Convert, but that any evidence of pre-petition misconduct alleged to be fraudulent is barred by the time limitations of § 1230.

## ORDER

Accordingly, Debtor's request that this Court deny Carey Graham's Motion to Dismiss or Convert, filed on February 18, 2010, Dckt. No. 317 is DENIED. Carey is deemed to have standing to pursue his Motion to Dismiss or Convert. Debtor's request that

this Court enter an order that Carey Graham's Request for an Administrative Claim be denied as moot, filed on May 4, 2010, Dckt. No. 345 is DENIED. Debtor's objections to Transfers of Claims # 8 and 9, filed on June 1, 2010, Dckt. Nos. 358 and 359 are OVERRULED.

It is further ORDERED that the evidence on the Motion to Dismiss is limited to post-petition activity. A scheduling order will be entered to govern the future proceedings in this case.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 15th day of June, 2010.